**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SHIRA KOHN and ANDRES VIVAS, | § | Lead Case No. 4:23-cv-03035 |
| *on   behalf of themselves and all others* | § | |
| *similarly situated*, | § | Consolidated Case: |
| | § | |
| Plaintiffs, | § | 4:23-cv-03643 |
| | § | |
| v. | § | |
| | § | Judge Lee H. Rosenthal |
| LOREN D. STARK COMPANY, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iv

I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS...................1

II.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ................................2

       A.  Whether the Court should provisionally certify the Settlement Class.
           The standard of review is given by the applicable Fed. R. Civ. P. 23(a) and (b)
           factors................................................................................................................2

       B.  Whether the Court should grant preliminary approval of this proposed Class
           Action Settlement. The standard of review is given by the factors stated in Fed.
           R. Civ. P. 23(e), and those articulated by the Fifth Circuit in *Reed v. General
           Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)...........................................2

       C.  Whether the Notice to the Class is the best notice practicable under the
           circumstances. The standard of review is given by Fed. R. Civ. P. 23 (c)(2)(B) .........2

III.   SUMMARY OF THE SETTLEMENT ...........................................................................3

       A.  Settlement Benefits ..........................................................................................3

           1.  Monetary Relief ........................................................................................3

           2.  Confirmatory Discovery ...........................................................................4

       B.  Release ..............................................................................................................4

       C.  The Notice and Claims Process .......................................................................5

           1.  Claims ........................................................................................................5

           2.  Requests for Objection and Exclusion......................................................6

       D.  Fees, Costs, and Service Awards .....................................................................6

       E.  Summary of Argument .....................................................................................7

IV.    LEGAL AUTHORITY ...................................................................................................7

V.     ARGUMENT ..................................................................................................................9

       A.  The Court Should Certify the Proposed Class for Settlement Purposes.......................9

           1.  The Settlement Class is so Numerous that Joiner is Impracticable .....................11

           2.  Questions of Law and Fact are Common to the Settlement Class........................11

3.  Plaintiffs' Claims and Defenses are Typical of the Settlement Class...................12

4.  Plaintiffs and Their Counsel Will Provide Fair and Adequate Representation for the Settlement Class .................................................12

5.  Certification is Appropriate Because Common Issues Predominate Over Individualized Ones, and Class Treatment is Superior ...........................13

B.  The Settlement Terms Are Fair, Adequate and Reasonable .......................................14

1.  Class Representatives and Class Counsel Have Adequately Represented the Class (Fed. R. Civ. P. 23(e)(2)(A) .............................................16

2.  The Settlement is the Product of Good-Faith Arms' Length Negotiation and is Absent of Any Collusion (Fed. R. Civ. P. 23(e)(2)(B) ......................17

3.  The Settlement Agreement Provides Substantial Relief to the Settlement Class, in Light of the Uncertainty of Prevailing on the Merits, the Effectiveness of the Proposed Distribution of Relief, and the Attorneys' Fees Sought (Fed. R. Civ. P. 23(e)(2)(C) ..............................................18

    i.  The uncertainty of prevailing on the merits....................................18

    ii.  The effectiveness of the proposed relief, including the method of processing class member claims ...................................................19

    iii.  The attorneys' fees sought ..............................................................20

4.  The Proposed Settlement Treats Settlement Class Members Equitably...............20

5.  The *Reed* factors considered by the Fifth Circuit Courts also Weigh in Favor of Preliminary Approval ...................................................21

C.  The Proposed Settlement Administrator Will Provide Adequate Notice ...................23

D.  Appointment of the Settlement Administrator...........................................................25

E.  Appointment of Class Representatives .....................................................................25

F.  Appointment of Settlement Class Counsel ...............................................................25

VI.   CONCLUSION...................................................................................................................26

CERTIFICATION OF CONFERRAL .........................................................................................26

CERTIFICATE OF SERVICE .....................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  No. H-17-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)....................................................... 15

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................................... 10

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir.2004) ...................................................................................................... 22

*Billittri v. Securities Am., Inc.*,
  Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ........ 24

*Caddick v. Tasty Baking Co.*,
  No. 2:19-cv-02106-JDW, 2021 WL 1274607 (E.D. Pa. Apr. 12, 2021) ................................... 20

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
  No. 17-2142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020) .................................... 20

*Cisneros v. EP Wrap-It Insulation, LLC*,
  Civ. No. 19-500 GBG/GJF, 2022 WL 2304146, (D.N.M. June 27, 2022).............................. 20

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ............................................................................................... 9, 22

*Dehoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) .............................................................................................. 9

*Feder v. Elec. Data. Sys. Corp.*,
  429 F.3d 125 (5th Cir. 2005) ............................................................................................... 13, 16

*Garza v. Sporting Goods Properties, Inc.*,
  No. CIV. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ................................. 9

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)........................... 18

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...................... 19

*Hapka v. CareCentrix, Inc.*,
  No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018).................................. 14

iv

*Hays v. Eaton Grp. Attorneys, LLC*,
No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ......................................... 15

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ................................................................................................. 14

*In re Beef Indus. Antitrust Litig.*,
607 F.2d 167 (5th Cir. 1979) ............................................................................................................ 8

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) .................................. 19

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 11-CV-1363,
2012 WL 92498 (E.D. La. Jan. 10, 2012) .................................................................................... 8

*In re Combustion, Inc.*,
968 F. Supp. 1136 (W.D. La. 1997) ............................................................................................ 20

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ......................................................................................................... 11

*In re Equifax, Inc. Customer Data Security Breach Litigation*,
No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .................................. 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) ......................................................................................................... 19

*In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 ....................................................................................................... 10, 11, 14

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*,
910 F. Supp. 2d 891 (E.D. La. 2012) .......................................................................................... 15

*In re Pool Prods. Distrib. Market Antitrust Litig.*,
310 F.R.D. 300 (E.D. La. 2015) ..................................................................................................... 8

*In re Samsung Top-load Washing Machine Mkt'g, Sales Pracs. & Prods. Liab. Litig.*,
No. 17-ml-2792-D, 2020 WL 261671 (W.D. Okla. May 22, 2020) ....................................... 19

*In re Shell Oil Refinery*,
155 F.R.D. 552 (E.D. La. Oct. 20, 1993) ................................................................................. 8, 20

*In re Target Corp. Customer Data Sec. Breach Litig.*,
MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015) .................... 22

*In re Target Corp. Customer Data Security Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015) .................................................................................................. 10

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ..................................... 14

*Jenkins v. Raymark Industries, Inc.*,
   782 F.2d 468 (5th Cir. 1986) ...................................................................................... 13

*Jenkins v. Trustmark Nat. Bank*,
   300 F.R.D. 291 (S.D. Miss. March 25, 2014) ........................................................... 20

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................... 8

*Kincade v. Gen. Tire & Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981) ........................................................................................ 8

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ................................................................................ 17

*Montgomery v. Continental Intermodal Group-Trucking LLC*,
   Case No. 2:19-cv-940 GJF, 2021 WL 1339305 (D.N.M. Apr. 9, 2021) ..................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).................................................................................................... 23

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ...................................................................................... 11

*Nelson v. Constant*,
   No. 17-14581, 2020 WL 5258454 (E.D. La. Sept. 3, 2020)................................. 9, 11

*ODonnell v. Harris Cnty., Texas*,
   No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019)................................. 15

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ..................................................................................... 8

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ............................................................................. 2, 3, 15

*Southern Independent Bank v. Fred's, Inc.*,
   No. 2:15-CV-799-WKW, 2019 WL 1179396 (M.D. Ala. Mar. 13, 2019).............................. 19

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ..................................................................................... 12

*Stott v. Cap. Fin. Servs. Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2005) ......................................................................... 15, 24

*Vaughn v. Am., Honda Motor Co.*,
    627 F. Supp. 2d 738 (E.D. Tex. 2007) ................................................................. 17

*Wal-Mart Stores v. Dukes,*
    564 U.S. 338 (2011) ............................................................................................ 11

*Welsh v. Navy Fed. Credit Union*,
    No. 16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ................ 17

**Constitutions**

Tex. Const. art. 1, § 19 ................................................................................................ 24

U.S. Const. amend. XIV .............................................................................................. 24

**Statutes**

N.Y. Gen. Bus. Law §349 ............................................................................................. 1

**Rules**

Fed. R. Civ. P. 23 ............................................................... 12, 15, 16, 20, 21, 23, 24

Fed. R. Civ. P. 23(a) ....................................................................................... 2, 9, 13

Fed. R. Civ. P. 23(a)(1) .............................................................................................. 11

Fed. R. Civ. P. 23(a)(2) .............................................................................................. 11

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 12, 15

Fed. R. Civ. P. 23(b) ..................................................................................................... 2

Fed. R. Civ. P. 23(b)(3) ................................................................... 10, 13, 14, 23

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 3, 23, 24

Fed. R. Civ. P. 23(e) ............................................................................. 2, 7, 15, 23

Fed. R. Civ. P. 23 (e)(1) ....................................................................................... 23, 24

Fed. R. Civ. P. 23 (e)(2) ............................................................................. 9, 14, 15, 21

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................ 16

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................ 20

Fed. R. Civ. P. 23(e)(3) ................................................................................................ 15

**Other Authorities**

2 *McLaughlin on Class Actions,* § 6:7 (15th ed. 2018) .............................................. 16

2 Newberg & Conte, *Newberg on Class Actions*, § 11.22 (3d ed. 1992) ..................... 8

2 Newberg & Conte, *Newberg on Class Actions*, § 11.25 (3d ed. 1992) ..................... 9

2 Newberg & Conte, *Newberg on Class Actions*, § 11.27 (3d ed. 1992) ..................... 8

*Manual for Complex Litigation*, § 30.44 (4th ed.) ...................................................... 8

Plaintiffs Shira Kohn and Andres Vivas, individually and on behalf of all others similarly situated ("Plaintiffs"), submit this Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action settlement.

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This case arises from an October 2022 cyberattack against Defendant Loren D. Stark Company, Inc. ("LDSCO" or Defendant," and together with Plaintiffs, the "Parties") in which unauthorized third parties gained access to LDSCO's computer networks ("Data Incident"). LDSCO determined that files containing Plaintiffs' and Settlement Class Members' personally identifiable information ("PII") including full names and unencrypted Social Security numbers may have been compromised and provided notification of the Data Incident to all individuals in accordance with applicable law.

On August 18, 2023, Plaintiff Kohn was first to file her class action complaint against LDSCO alleging various causes of action arising from the Data Incident. ECF Doc. 1. On September 28, 2023, Plaintiff Vivas filed a second class action complaint against LDSCO, arising from the same Data Incident with similar allegations and causes of action as the *Kohn* suit. Through their respective class actions, Plaintiffs alleged a combination of the following causes of action against Defendant: negligence; negligence *per se*; breach of implied contract; unjust enrichment; breach of Third-Party Beneficiary Contract; Breach of Fiduciary Duty; and Violation of New York's General Business Law § 349. The cases were subsequently consolidated by way of an unopposed motion, and on January 12, 2024, Plaintiffs filed their Consolidated Complaint ("Complaint"). ECF Doc. 33.

On March 26, 2024, LDSCO filed a motion to dismiss Plaintiffs' Complaint. ECF Doc. 37. At that point, the Parties deemed it advisable to pursue possible resolution of this matter, scheduled

a formal private mediation, and sought a 60-day stay of the proceedings, which this Court granted. ECF Doc. 39.  After a robust exchange of informal pre-mediation discovery, on May 13, 2024, the Parties took part in an all-day mediation conducted at arm's-length under the auspices of Hon. Morton Denlow (Ret.), a highly-regarded third-party neutral with considerable experience mediating data breach cases. *See* Declaration of Justin Walker ("Walker Decl."), attached hereto as Exhibit A at ¶ 18.  While the mediation ended in an impasse, Judge Denlow made a mediator's proposal on May 14, 2024, which the Parties subsequently both accepted. *Id*. at ¶ 19.

The result of these extensive arm's length negotiations was a settlement that is fair, adequate, and reasonable. The agreement provides for a non-reversionary common fund of $750,000.00, from which Class Members can claim (1) a *pro rata* cash payment up to a maximum of $70.00; and (2) reimbursement of up to $5,000.00 for Out-of-Pocket Losses.[1]  Settlement Class Members will benefit from various security-related measures implemented by LDSCO that will protect their PII in the future.

The Parties advised the Court of this proposed settlement and sought an extension of the stay. ECF Doc. 40. The Court granted that extension and ordered Plaintiffs to submit their motion for preliminary approval of class action settlement no later than July 1, 2024. ECF Doc. 41.

## II.     STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

A.  Whether the Court should provisionally certify the Settlement Class.  The standard of review is given by the applicable Fed. R. Civ. P. 23(a) and (b) factors.

B.  Whether the Court should grant preliminary approval of this proposed Class Action Settlement. The standard of review is given by the factors stated in Fed. R. Civ. P. 23(e), and those articulated by the Fifth Circuit in *Reed v. General Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983).

C.  Whether the Notice to the Class is the best notice practicable under the circumstances.

---

[1] The Settlement Agreement ("SA") in its entirety is attached as Exhibit B to this Memorandum. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

The standard of review is given by Fed. R. Civ. P. 23(c)(2)(B).

A district court's approval of a class settlement may only be overturned on appeal for abuse of discretion. *Reed*, 703 F.3d at 172.

## III.    SUMMARY OF THE SETTLEMENT

### A.    Settlement Benefits.

The settlement creates a $750,000.00 non-reversionary settlement fund. SA ¶ 42. The Settlement Class Members will be entitled to two separate forms of relief from the Settlement Fund: (1) a *pro rata* cash payment up to a maximum of $70.00; and (2) reimbursement for up to $5,000.00 of documented Out-of-Pocket Losses. *Id.* ¶¶ 48, 50. The Settlement Agreement provides for relief for a Settlement Class defined as:

> the persons who are identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by LDSCO that their Personal Information was potentially compromised in the Data Incident

*Id.* ¶ 35. The Settlement Class consists of approximately 58,065 individuals. The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) LDSCO, its subsidiaries, parent companies, successors, predecessors, and any entity in which LDSCO or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline. *Id.*

### 1.    Monetary Relief.

Under the terms of the Settlement Agreement, after the distribution of attorneys' fees, class counsel's litigation costs and expenses, administration fees, reimbursement of out-of-pocket losses, and service awards, the Settlement Administrator will make *pro rata* settlement payments of any remaining funds to each Settlement Class Member who submits a claim. This estimated

$70.00 cash payment may decrease on a *pro rata* basis, depending upon the number and amount of claims approved. *Id.* ¶ 48.

Additionally, the Settlement Administrator, from the Settlement Fund, will provide reimbursement, up to a total of $5,000.00 per Settlement Class Member, upon submission of a Claim Form and supporting documentation, for Out-of-Pocket Losses incurred as a result of the Data Incident, including, without limitation: (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after October 18, 2022, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.* at ¶ 50.

### 2. Confirmatory Discovery.

In addition to the monetary benefits outlined above, LDSCO will provide reasonable access to confidential confirmatory discovery and/or a confidential declaration to Class Counsel which will include documents regarding the facts and circumstances of the Data Incident, LDSCO's response thereto, and the changes and improvements that have been made or will be made to protect Settlement Class members' information from further unlawful intrusions. SA ¶ 62. The information shall identify the approximate annual cost of those security-related measures, which shall be paid by LDSCO separately and apart from the Settlement Fund. *Id.*

### B. Release.

The release is tailored to the claims that have been pleaded or could have been pleaded in this case. *Id.* ¶ 27. Settlement Class Members who do not exclude themselves from the Settlement

Agreement will release all claims, whether known or unknown, against Defendant and its affiliates, that relate to the Data Incident. *Id*. ¶¶ 80-82.

    **C. The Notice and Claims Process.**

    The Parties mutually agree, and seek Court approval of, the appointment of Verita Global, LLC, formerly known as KCC Class Action Services, LCC or KCC ("Verita") – a firm with considerable experience in notice and settlement administration -- as Settlement Administrator. *See* Supporting Declaration of Carla A. Peak of Verita ("Peak Decl."), attached hereto as Exhibit C. The Settlement Fund amount provided by Defendant, or on behalf of Defendant, will pay the entirety of the Notice and Administrative Expenses (estimated to be $96,012), including the cost of Notice. SA ¶ 46. The Notice plan provides for individual Notice to Settlement Class Members directly through first-class mail, to the postal address that LDSCO has on record for each Settlement Class Member. *Id.* ¶ 66. Settlement Class Members will be able to submit Claim Forms through the Settlement Website, by mail, or through use of the tear-off claim form attached to the Postcard Notice.

    **1. Claims.**

    The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. Settlement Class Members will have until sixty (60) days after the Notice Deadline to complete and submit their Claim Form, either by mail or online. *Id.* ¶ 4. The Claim Form is written in plain language to facilitate Settlement Class Members' ease in completing it. Peak Decl. ¶ 22; SA Exs. 1 and 3.

### 2. Request for Exclusion and Objections.

Settlement Class Members will have up to and including sixty (60) days after the Notice Deadline to object to or to submit a request for exclusion from the Settlement Agreement. *Id.* ¶¶ 21-22. Similar to the timing of the claims process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed thirty (30) days before these deadlines. *Id.* ¶ 85.

To be excluded from the Settlement Agreement, a Settlement Class Member's request for exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. *Id.* ¶ 67. Any Member of the Settlement Class who does not opt-out shall be bound by the Settlement. *Id*.

To object to the Settlement, Settlement Class Members must submit individual objections in writing. The written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. SA ¶ 68.

### D.  Fees, Costs, and Service Awards.

The Settlement Agreement calls for a reasonable service award to Plaintiffs in the amount of $3,500.00 each. *Id.* ¶ 83. The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering counsel's questions. Walker Decl. ¶ 35.

Plaintiffs may also seek attorneys' fees and reimbursement of litigation costs and expenses of up to one-third of the Settlement Fund, or $250,000.00. SA ¶ 85. Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards at least thirty (30) days prior to the Opt-Out and Objection deadlines. *Id.*

### E.  Summary of Argument.

Plaintiffs have negotiated a fair, reasonable, and adequate settlement that guarantees Settlement Class Members significant relief in the form of a $750,000.00 non-reversionary common fund, from which Settlement Class Members may seek substantial monetary payments. This putative Settlement Class meets the applicable Rule 23(a)-(b) standards for provisional certification. The Settlement Agreement is well within the range of possible approval and meets the Rule 23(e) and *Reed* factors for preliminary approval, and for the Court to direct notice to the Class. The Notice Program of direct notice to Settlement Class Members by U.S. Mail meets all due process considerations and is the best notice practicable under the circumstances.

## IV.    LEGAL AUTHORITY

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class. *See* Fed. R. Civ. P. 23(e). The preliminary approval stage provides a

forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992); *In re Beef Indus. Antitrust Litig.,* 607 F.2d 167, 175 (5th Cir. 1979). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. Oct. 20, 1993). At this preliminary approval stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012). The standards at the preliminary approval stage are not as stringent as those applied to a motion for final approval. *See In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc*., 245 F.R.D. 71, 86 (E.D.N.Y. 2007))*.* "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. at 314-315.

Plaintiffs seek preliminary approval of the proposed settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation*, § 30.44 (4th ed.). Judicial and public policy favor the resolution of disputes through settlement. *See ODonnell v. Harris County Texas,* No. H-16-1414, 2019 WL 422040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co*., 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public

interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *Dehoyos v. Allstate Corp.,* 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the class for purposes of settlement.

Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiffs' motion and allow notice to be provided to the class. *See* 2 Newberg & Conte, *Newberg on Class Actions*, § 11.25 (3d ed. 1992).

## V.    ARGUMENT

### A.  The Court Should Certify the Proposed Class for Settlement Purposes.

Plaintiffs seek certification of a Settlement Class consisting of "the persons who are identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by LDSCO that their Personal Information was potentially compromised in the Data Incident." SA ¶ 35. The Settlement Class consists of approximately 58,065 individuals. *See* Walker Decl., ¶ 24.

Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a); *see also Nelson v. Constant,* No. 17-14581, 2020 WL 5258454, at *4 (E.D. La. Sept. 3, 2020) (citing Fed. R. Civ. P 23(a)).

Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Despite the necessarily rigorous analysis of certain prongs at the preliminary certification stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified for settlement. *See In re Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *reversed on other grounds by In re Equifax Inc. Cust. Data Security Breach Litig.*, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *see, e.g., In re Target Corp. Customer Data Security Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040. This case is no different.

### 1.  The Settlement Class is so Numerous that Joinder is Impracticable.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class of 58,065 clearly surpasses the threshold required to establish numerosity.

### 2.  Questions of Law and Fact are Common to the Settlement Class.

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high: commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and are capable of generating common answers "apt to drive the resolution of the litigation," even where the individuals are not identically situated. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d at 1052 (citing *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson,* 2020 WL 5258454, at *5 (E.D. La. Sept. 3, 2020) (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Here, the commonality requirement is satisfied because Plaintiffs can demonstrate numerous common issues exist. Whether LDSCO failed to adequately safeguard the records of Plaintiffs and Settlement Class Members is a question common across the entire class. LDSCO's data security safeguards are common across the Settlement Class, and the safeguards applied to the data of one Settlement Class Member do not differ from those applied to another.

11

Other specific common issues include (but are not limited to):

- Whether LDSCO failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;

- Whether LDSCO's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and

- Whether LDSCO's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiffs in their Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs meet the commonality requirement of Rule 23.

### 3.  Plaintiffs' Claims and Defenses are Typical of the Settlement Class.

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); Fed. R. Civ. P. 23(a)(3). Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the cybercriminal's attack on LDSCO's computer system—and the cybersecurity protocols that LDSCO had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' data. Thus, Plaintiffs' claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

### 4.  Plaintiffs and Their Counsel Will Provide Fair and Adequate Representation for the Settlement Class.

The Class Representatives must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, Plaintiffs must establish that: (1) there is no antagonism or conflict of interest between the Class Representative and other class

members; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they and the Settlement Class seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by LDSCO in the same manner. In addition, under the terms of the Settlement, Plaintiffs and Settlement Class Members will all be eligible for the same reimbursement of documented out-of-pocket losses, the same pro rata cash payment, as well as data-security enhancements.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators—in particular, in data breach incident litigation—and are well suited to advocate on behalf of the class. *See* ECF Docs. 21, 21-1, 21-2, and 21-3. They have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate, significant relief to Settlement Class Members. Thus, the requirements of Rule 23(a) are satisfied.

**5. Certification is Appropriate Because Common Issues Predominate Over Individualized Ones, and Class Treatment is Superior.**

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

<u>First</u>, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc*., 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether LDSCO had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Settlement

13

Class, and whether LDSCO breached that duty. The common questions that arise from LDSCO's conduct predominate over any individualized issues.

Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).[2]

*Second*, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of data breach cases arising out of the *same* Data Incident. Because the common questions of fact and law that arise from LDSCO's conduct predominate over any individualized issues, and a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Thus, the class should be certified for settlement purposes.

## B. The Settlement Terms Are Fair, Reasonable, and Adequate.

On preliminary approval, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2). Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class

---

[2] *See also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, Case No.: 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (all finding predominance in data breach class actions).

representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." *Id.* 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Fifth Circuit had developed its own factors—known as the *Reed* factors—for determining whether a settlement was fair, adequate, and reasonable. *See Stott v. Cap. Fin. Servs. Inc.,* 277 F.R.D. 316, 343 (N.D. Tex. 2005) (citing *Reed*, 703 F.2d at 172). Because the Rule 23 and *Reed* factors overlap, Fifth Circuit courts often combine them in analyzing class settlements.[3]

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *See Hays*, No. 17-88-JWD-RLB, 2019 WL 427331, at \*9; *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012). A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or

---

[3] *See ODonnell v. Harris Cnty., Texas,* No. H-16-1414, 2019 WL 4224040, at \*8 (S.D. Tex. Sept. 5, 2019) (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at \*9 (M.D. La. Feb. 4, 2019)); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at \*3 (S.D. Tex. Jan. 30, 2019); *see also* Fed. R. Civ. P. 23(e)(2) (The Committee Notes to 2018 amendments state: "The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions,* § 6:7 (15th ed. 2018). Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant preliminary approval and direct notice to issue to the class.

### 1. The Class Representatives and Class Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)).

To satisfy the adequacy of representation requirement, Plaintiffs must establish that: (1) there is no antagonism or conflict of interest between the Class Representative and other members of the class; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Feder*, 429 F.3d at 130. Here, the Class Representatives' PII, like the PII of all Settlement Class Members, has been impacted by the *same* Data Incident, and thus Plaintiffs have the same interests as the Settlement Class. Moreover, the Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the case, reviewing the Settlement documents, and for answering counsel's many questions. Walker Decl., ¶¶ 34-36.

Proposed Class Counsel has also vigorously pursued the interests of the Settlement Class in securing a Settlement that brings immediate, considerable relief to the Settlement Class while avoiding the risks, costs, and delay of continued litigation. In doing so, they relied on extensive experience in data breach litigation, their detailed investigation of this matter, and informal discovery exchanged during the course of negotiations. *See id.*, ¶¶ 17-19, 23-24, 29-30, and ECF Docs. 21-1, 21-2, and 21-3.

**2.  The Settlement is the Product of Good-Faith Arm's-Length Negotiations and is Absent of Any Collusion (Fed. R. Civ. P. 23(e)(2)(B)).**

"The Court may ... presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). Here, there is no evidence of fraud or collusion that could possibly be presented. The negotiations here occurred at arm's length by experienced litigation counsel, were overseen by a third-party neutral, and are presumed to be fair, reasonable, and adequate. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The Parties produced informal discovery, including information about the scope and cause of the Data Breach and class size. *See* Walker Decl. ¶¶18. After formal mediation overseen by a well-respected mediator (Judge Denlow), the Parties reached an agreement on the principal terms Settlement. *See id.* The Parties continued to negotiate the details of the Settlement Agreement and its exhibits over the next several weeks. *See id.,* ¶ 22. The negotiations were adversarial, but professional. *See id.*, ¶ 20. The negotiations furthered the Settlement Class's interests, given the substantial relief achieved on behalf of the Settlement Class. *See id.,* ¶ 23. The Settlement Agreement, Notices, Claim Form, and other exhibits were finalized in June 2024. *See id.*, ¶ 22.

Moreover, the proposed Settlement does not favor any class member or group of class members, which also weighs against any evidence of fraud or collusion and in favor of approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007).

**3.  The Settlement Agreement Provides Substantial Relief to the Settlement Class, in Light of the Uncertainty of Prevailing on the Merits, the Effectiveness of the Proposed Distribution of Relief, and the Attorneys' Fees Sought. (Fed. R. Civ. P. 23(e)(2)(C)).**

Most importantly, the Settlement guarantees Settlement Class Members real, meaningful relief. The settlement provides for a generous $750,000.00 non-reversionary common fund. SA

17

¶ 42. From the Settlement Fund, all Settlement Class Members are eligible to submit a claim for up to $5,000.00 for reimbursements for document out-of-pocket expenses. SA ¶ 50. All Settlement Class Members may also claim a pro rata cash payment up to a maximum of $70.00. SA ¶ 48. Settlement Class Members will benefit from various security-related measures implemented by LDSCO that will protect their PII in the future.

These Settlement terms are consistent with, and in fact exceed, agreement terms approved by Courts in similar data breach cases. *See e.g., Chatelain et al. v. C, L and W PLLC, d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (42nd Dist. Tex.) (data breach settlement providing 12 months of credit monitoring services and no expense reimbursements). Data breach settlements are often evaluated on a "per person" recovery basis, and the $12.91 per person recovered here ($750,000.00 divided by 58,065 Settlement Class Members) far exceeds many other finally approved data breach settlements. *See* Walker Decl. ¶¶ 27-28.

### i. The uncertainty of prevailing on the merits.

While Plaintiffs believe they have solid claims and will prevail, success is not guaranteed, especially where serious questions of law and fact exist, which is common in data breach litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). While Plaintiffs strongly believe in the merits of their case, they also understand that LDSCO will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs will have to immediately survive LSDCO's motion to dismiss (ECF Doc. 37) in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage.

*See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that Plaintiffs will have to meet— and one that has been denied in other cybersecurity incident cases. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221, at *1 (D.S.C. May 14, 2024); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, damages methodologies in data breach cases, while sound in Plaintiffs' view, remains untested in a class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis in a data security incident case is rife with uncertainty. *See, e.g., Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *8 (M.D. Ala. Mar. 13, 2019) (holding under *Daubert* motion that causation was not met for class certification purposes in data security breach case). The ability to maintain class certification through trial is also another hurdle Plaintiffs will have to meet. It is obvious that Plaintiffs' success at trial is far from certain. Through settlement, Settlements Class Members gain significant benefits without the risk of receiving no relief at all.

> ii. *The effectiveness of the proposed distribution of relief, including the method of processing class-member claims.*

"Under this factor the court, 'scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims' and 'should be altered to whether the claims process is unduly demanding.'" *Montgomery v. Continental Intermodal Group-Trucking LLC*, Case No. 2:19-cv-940 GJF, 2021 WL 1339305, at *4 (D.N.M. Apr. 9, 2021). Here, the method of processing claims is "simple, straightforward, and nonburdensome." *In re Samsung Top-load Washing Machine Mkt'g, Sales Pracs. & Prods. Liab. Litig.*, No. 17-ml-2792-D, 2020 WL 261671, at *16 (W.D. Okla. May 22, 2020) (slip op.). Settlement Class Members may either submit a Claim Form online

or submit a paper claim form (including the easy-to-use "tear off" clam form). *See Cisneros v. EP Wrap-It Insulation, LLC*, Civ. No. 19-500 GBG/GJF, 2022 WL 2304146, at*6 (D.N.M. June 27, 2022) (slip op.). Settlement Class Members have an opportunity to cure any deficient claim. SA ¶ 52. In addition, all Settlement Class Members will receive individualized notices and have the opportunity to opt-out of or object to the Settlement. *See Caddick v. Tasty Baking Co.*, No. 2:19-cv-02106-JDW, 2021 WL 1274607, at *6 (E.D. Pa. Apr. 12, 2021) (slip op.). Moreover, the distribution relief is effective. The Settlement Administrator will pay Valid Claims by check or electronic method as soon as practicable after the Effective Date. SA ¶ 53; *see Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *3 (D. Kan. June 18, 2020) (checks distributed by hand and/or by mail met Rule 23 requirement).

> ### *iii. The attorneys' fees sought.*

Class Counsel intends to seek an award of attorneys' fees and reimbursement of litigation expenses in an amount not to exceed $250,000.00. Attorneys' fees requests of one-third or more are regularly granted by Fifth Circuit Courts. *See, e.g., In re Shell Oil Refinery,* 155 F.R.D. 552 (E.D. La. 1993) (awarding fees of one-third of a $170 million common fund class action settlement); *In re Combustion, Inc.*, 968 F. Supp. 1136, 1142 (W.D. La. 1997) (approving a 36% fee of a $127 million common fund class action settlement); *see also Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. March 25, 2014) (approving fees of 33.33% of a $4 million common fund class action settlement) (collecting additional cases).

### 4. The Proposed Settlement treats Settlement Class Members Equitably. (Fed. R. Civ. P. 23(e)(2)(D)).

Here, the proposed Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to make a claim for the same amount of out-of-pocket expense reimbursement, including lost time, as well as the same *pro rata*

cash payment. Finally, all Settlement Class Members will benefit from LDSCO's security-related enhancements. Importantly, direct Notice will be sent to all Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, as stated above, while Plaintiffs will be seeking a $3,500.00 service awards, this award is less than what any given Settlement Class Member can claim in expense reimbursements *alone* (not taking into account the *pro rata* cash) and is justified by the benefits brought to the Settlement Class by the efforts of Plaintiffs.

Thus, the Settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors.

**5. The *Reed* Factors Considered by Fifth Circuit Courts also Weigh in Favor of Preliminary Approval.**

The factors considered by Fifth Circuit courts prior to the amendment of Rule 23, and still considered by those courts today, also weigh in favor of preliminary approval.

*First,* as discussed at length above, there is no evidence of fraud or collusion between the Parties. In fact, the Settlement was only reached after arm's length, good faith negotiations between the Parties and their highly competent counsel, and a formal day-long mediation overseen by a well-respected third-party mediation (Judge Denlow).

*Second,* continued litigation is likely to be complex, lengthy, and expensive. Although Plaintiffs are confident in the merits of their claims, the risks discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, Plaintiffs anticipate incurring substantial additional costs in pursuing this litigation further. Should litigation continue, Plaintiffs would likely need to defeat a motion to dismiss, counter a later motion for summary judgment, and both gain and maintain certification of the class. The level of additional costs would significantly increase as Plaintiffs began their preparations for the certification argument and, if successful, a near inevitable interlocutory appeal attempt. If Plaintiffs survive these rounds of

briefing and possible interlocutory appeals, a trial will ensue, with likely appeals to follow. Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *remanded by In re Target Corp. Customer Data Sec. Breach Litig.* 847 F.3d 608, 614 (8th Cir. 2017) (holding district court did not conduct a "meaningful analysis of class certification" issue).

*Third*, settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and LDSCO's defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir.2004); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 2007).

*Fourth,* continued litigation presents substantial risks. As set forth above, while Plaintiffs are confident in the merits of their claims, they face significant risk in continued litigation due in part to the constantly evolving nature of data breach litigation. Indeed, Plaintiffs' path to recovery through litigation is full of risks, e.g., pleadings stage, class certification stage, proving causation and liability, maintaining class certification through trial, each, by itself, could impede the successful prosecution of this matter through trial and eventual appeals, potentially resulting in zero recovery.

*Fifth*, the Settlement provides for recovery that equals or surpasses that of similar Settlements approved by Courts across the country. *See* Section VI(B)(3), *supra.*

*Sixth,* while this factor is most appropriately examined after the class has been issued notice and had a chance to respond, Plaintiffs have no reason to believe there will be any antagonism to the Settlement. Proposed Class Counsel, with their depth of experience in litigating data breach class actions, maintain the Settlement provides significant relief to Settlement Class Members, and Plaintiffs strongly believe that it is favorable for the Settlement Class and is fair, reasonable, adequate, and worthy of preliminary approval. *See* Walker Dec. ¶¶ 26, 29-30, 34.

Thus, the additional *Reed* factors also weigh in favor of preliminary approval.

### C.  The Proposed Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Due Process clauses of the United States and Texas Constitutions, Federal Rule of Civil Procedure 23, the *Manual for Complex Litigation. See* S.A. Exs 1-2. Here, the Settlement provides for direct and individual Notice to be sent via first class mail to each Settlement Class Member. Peak Decl., ¶¶ 10-11. Prior to mailing, the addresses will be checked for accuracy using various databases. *Id.* ¶ 12. Notices returned as undeliverable will be remailed. *Id.* ¶ 13.

All versions of the Settlement Notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. *Id.* ¶ 14. Verita will also make a toll-free telephone number and case specific email available for settlement-related inquiries. *Id.* ¶¶ 15-16.

The Notices themselves are clear and straightforward. *Id.* at ¶¶ 19-24. Their design is consistent with the Federal Judicial Center's "illustrative" forms of model plain notice language. *Id.* ¶ 20. They define the Settlement Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested Service Award for the Class Representative, as well as the amount that proposed Class Counsel intends to seek in fees and expenses; explain procedures for making claims, objections, and requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery, and; describe the date, time, and place of the Final Fairness Hearing. *See* S.A. Exs. 1-2.

The proposed direct mail Notice is the gold standard and is consistent with other notice programs approved in the Fifth Circuit. *See Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to class members by first class mail); *Billittri v. Securities Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Accordingly, the Notice provides Due Process under the U.S. and Texas Constitutions and complies with the Rule 23 requirements and should be approved by the Court. *See* U.S. Const. amend. XIV; Tex. Const. art. 1, § 19; Fed. R. Civ. P. 23(c)(2)(B) & (e)(1).

**D. Appointment of the Settlement Administrator.**

In connection with the notice plan and settlement administration, the Parties request that the Court appoint Verita to serve as the Settlement Administrator. Verita has a trusted and proven track record of supporting thousands of class action administrations, with vast legal administration experience. *See* Peak Decl., ¶ 5.

**E. Appointment of Class Representatives.**

Plaintiffs should be provisionally appointed Class Representatives. They have represented the Settlement Class with no conflict of interest or antagonism between themselves and other members of the class. Their PII, like the PII of the Settlement Class Members, has been impacted in the *same* Data Incident, and, as a result, Plaintiffs have the same interests as the Settlement Class Members. *See* Walker Decl., ¶ 36. Moreover, Plaintiffs have capably represented the class—assisting in the investigation of the case, reviewing and approving pleadings, maintaining contact with Class Counsel, and answering Class Counsel's many questions. *See id.* ¶ 35. Finally, Plaintiffs have been informed about the nature of a class action and the potential advantages and disadvantages to them by proceeding in a class action rather than individually. *See id.* ¶¶ 10-11.

**F. Appointment of Settlement Class Counsel.**

Plaintiffs request appointment of Attorney John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC and Justin C. Walker of Markovits, Stock & DeMarco, LLC as Class Counsel, and Joe Kendall of Kendall Law Group as Texas Local Counsel. As outlined in the motion for appointment of Interim Class Counsel and the declarations in support (ECF Docs. 21, 21-1, 21-2, and 21-3). Proposed Class Counsel has extensive experience prosecuting class actions and other complex cases—in particular, data breach cases.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, reasonable, and adequate settlement that guarantees Settlement Class Members significant relief in the form of monetary payments and information security improvements. The Settlement Agreement is well within the range of possible approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes, direct Notice be issued to the Settlement Class, and grant their Motion for Preliminary Approval of Class Action Settlement.

Date: July 1, 2024                                Respectfully submitted,

s/ Justin C. Walker
Justin C. Walker (*admitted pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
jwalker@msdlegal.com

John J. Nelson (*admitted pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com

*Interim Class Counsel for Plaintiffs and Putative*
*Rule 23 Class*

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Phone:214-744-3000
Fax: 214-744-3015
jkendall@kendalllawgroup.com

*Interim Texas Local Counsel for Plaintiffs and Putative Rule 23 Class*

Terence R. Coates (*admitted pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

Gary M. Klinger (*pro hac vice forthcoming*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
glkinger@milberg.com

*Counsel for Plaintiffs and Putative Rule 23 Class*

## CERTIFICATION OF CONFERRAL

I, Justin C. Walker, Interim Class Counsel and Counsel for Plaintiffs, hereby aver pursuant to Local Rule 7.1(D) that I have conferred with the Defendant about the relief sought in this motion, and Defendant agreed not to oppose the relief sought.

s/ Justin C. Walker
Justin C. Walker

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, I electronically filed the foregoing with the Clerk of the above-captioned Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Justin C. Walker
Justin C. Walker

27