UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHIRA KOHN and ANDRES VIVAS, | § | Lead Case No. 4:23-cv-03035 |
| *on behalf of themselves and all others* | § | |
| *similarly situated*, | § | Consolidated Case: 4:23-cv-03643 |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Judge Lee H. Rosenthal |
| | § | |
| LOREN D. STARK COMPANY, INC., | § | |
| | § | |
| Defendant. | § | |

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................iii

MEMORANDUM IN SUPPORT ...........................................................................................1

I.      INTRODUCTION .....................................................................................................1

II.     INCORPORATION BY REFERENCE ....................................................................2

III.    SUMMARY OF SETTLEMENT TERMS ...............................................................3

        A.      The Settlement Class.....................................................................................3

        B.      Settlement Benefits .......................................................................................3

        C.      Notice, Fees, and Service Awards .................................................................5

IV.     LEGAL STANDARD ...............................................................................................6

V.      ARGUMENT .............................................................................................................8

        A.      The Settlement is Fair, Reasonable, and Adequate ......................................8

                1.      Plaintiffs and Class Counsel Provided Excellent Representation.....................8

                2.      The Settlement is the Product of Serious, Informed, and Arm's-Length
                        Negotiations ...........................................................................................9

                3.      The Settlement is Favorable Given the Complexity, Expense, and Likely
                        Duration of the Litigation ....................................................................10

                4.      The State of Litigation and Available Discovery Support Final Approval ......11

                5.      The Settlement Terms Appropriately Balance the Merits of Plaintiffs'
                        Claims with the Likelihood of Success Given the Attendant Risks.................12

                6.      The Recovery is Within an Appropriate Range ..............................12

                7.      The Settlement is Supported by Experienced Class Counsel and the
                        Proposed Class Representatives............................................................12

                8.      The Settlement Treats Class Members Equitably Relative to Each Other.......13

        B.      The Court Should Finally Certify the Settlement Class...........................................13

        C.      The Settlement Administrator Provided Notice Pursuant to the Court's
                Preliminary Approval Order and Satisfied Rule 23 and Due Process ...................14

VI.     CONCLUSION..........................................................................................................16

CERTIFICATION OF CONFERRAL ..................................................................................18

CERTIFICATE OF SERVICE ..............................................................................................18

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ........................................................................... 10, 11

*Billittri v. Securities America, Inc.*,
    Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ........ 14

*Burford v. Cargill, Inc.*,
    No. 05-0282, 2012 WL 5472118 (W.D. La. Nov. 8, 2012) ...................................... 8

*Cole v. Collier*,
    No. 4:14-CV-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) ........................... 10

*Cotter v. Checkers Drive-In Rests., Inc.*,
    No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ........................... 10

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ....................................................................... 7

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ................................................................ 13

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
    807 F. App'x 752 (10th Cir. 2020) .............................................................. 15

*Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................. 8, 10, 11

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
    No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 3, 2019) ............................ 10-11

*In re Citrix Data Breach Litig.*,
    No. 19-61350-CIV, 2021 WL 2410651 (S.D. Fla. Jun 11, 2021) ........................... 10

*In re Corrugated Container Antitrust Litig.*,
    659 F.2d 1322 (5th Cir. 1981) .................................................................. 12

*Jones v. Singing River Health Servs. Found.*,
    865 F.3d 285 (5th Cir. 2017) ................................................................... 10

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ..................................................... 7,12

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................ 14

*O'Donnell v. Harris Cnty.*,
    No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) .......................... 7

*Pettway v. Am. Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978) .................................................................. 7, 12-13

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................... 14

*Purdie v. Ace Cash Express, Inc.*,
  No. Civ.A.301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) .............................. 7

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .................................................... 6, 7, 8, 12

*Stott v. Capital Financial Services*,
  277 F.R.D. 316 (N.D. Tex. 2011) ................................................ 14

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ....................................................... 7

*Welsh v. Navy Fed. Credit Union*,
  No. 16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .................................. 9

**Rules**

Fed. R. Civ. P. 23 ............................................................................ 2, 6, 7, 14, 16

Fed. R. Civ. P. 23(a) ....................................................................... 13

Fed. R. Civ. P. 23(b) ....................................................................... 13

Fed. R. Civ. P. 23(c) ....................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) ........................................................ 14, 15

Fed. R. Civ. P. 23(c)(3) .................................................................. 14

Fed. R. Civ. P. 23(e) ....................................................................... 1, 6, 8, 14

Fed. R. Civ. P. 23(e)(2) ................................................................ 6, 7, 16

Fed. R. Civ. P. 23(e)(2)(C)(iv) ..................................................... 6

Fed. R. Civ. P. 23(e)(2)(D) ........................................................... 13

Fed. R. Civ. P. 23(e)(3) ................................................................. 6

**Other Authorities**

Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist & Plain
  Language Guide* (2010) ..................................................................... 15

Plaintiffs Shira Kohn and Andres Vivas ("Plaintiffs"), by and through the undersigned Class Counsel,[1] submit this Unopposed Motion for Final Approval of Class Settlement and Memorandum in Support, requesting final approval of this proposed class action settlement ("Settlement") (ECF 46-1) under Fed. R. Civ. P. 23(e) on the terms set forth in the Settlement Agreement.[2] Plaintiffs rely upon: the Declaration of Justin C. Walker in Support of Final Approval of Class Action Settlement ("Walker Final Approval Decl.") attached as **Exhibit 1**; the Declaration of Settlement Administrator Regarding Notice Procedures and Settlement Administration ("Verita Decl.") attached as **Exhibit 2**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3**.

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

If approved, the Settlement will successfully resolve the claims of approximately 58,065 class members whose personally identifiable information ("PII"), including full names and unencrypted Social Security numbers, were allegedly accessed during an October 2022 Data Incident that impacted Defendant Loren D. Stark Company, Inc.'s ("LDSCO" or "Defendant," and together with Plaintiffs, the "Parties") network. Plaintiffs alleged that as a result of the Data Incident, their PII was disclosed to third parties without authorization.

---

[1] The Court appointed Shira Kohn and Andres Vivas as the Settlement Class Representatives and appointed John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC, and Justin C. Walker of Markovits, Stock & DeMarco, LLC as Settlement Class Counsel (ECF Doc. 48).

[2] The Settlement Agreement ("SA") in its entirety is attached to Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF Doc. 43-2). Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

The Settlement Agreement negotiated on behalf of Plaintiffs and Class Members provides benefits to the Settlement Class through a $750,000 non-reversionary common fund from which Settlement Class Members are eligible to recover: (1) a pro rata cash payment up to a maximum of $70.00; and (2) reimbursement of up to $5,000.00 for Out-of-Pocket Losses. SA ¶¶ 38, 48, 49. The Settlement Fund also covers all costs of class notice and settlement administration, attorneys' fees and costs, and Class Representative Service Awards. *Id.* ¶ 46. In addition to the benefits provided via the Settlement Fund, as part of the Settlement, Defendant has implemented remedial measures to protect the Settlement Class from future cyber-incidents at its own expense and separate from the other settlement benefits. *Id.* ¶ 62. This Settlement represents an excellent result for the Settlement Class and provides them with meaningful benefits to remedy the harm they have allegedly suffered, or will suffer, due to the Data Incident.

On September 17, 2024, this Court granted preliminary approval of the Settlement, finding that it is "fair, reasonable, and adequate to the Settlement Class." ECF Doc. 48, at 3. The Court-ordered notice plan has since been successfully executed and the response to the Settlement has been favorable, with no Class Members opting out of the Settlement and no objections. *See* Verita Decl. ¶¶ 8-9.

For the reasons detailed below, Plaintiffs and the Settlement Class respectfully submit that the Settlement is fair, reasonable and adequate, and meets the requirements for final approval under Rule 23 and due process under the United States Constitution. Plaintiffs respectfully request the Court to finally approve the Settlement and enter a final judgment dismissing the case.

## II.     INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for the factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary

Approval of Class Action Settlement and their Memorandum in Support (ECF Docs. 42, 43) filed on July 1, 2024, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction. ECF Docs. 43-1, 43-2, and 43-3. Plaintiffs also incorporate by reference Plaintiffs' Motion for and Award of Attorneys' Fees, Expenses, and Service Awards (ECF Doc. 49), filed on November 18, 2024 and the Court's Order Granting Plaintiffs' Motion for Plaintiffs' Motion for and Award of Attorneys' Fees, Expenses, and Service Awards. ECF Doc. 50.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as:

> the persons who are identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by LDSCO that their Personal Information was potentially compromised in the Data Incident.

SA ¶ 35. The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) LDSCO, its subsidiaries, parent companies, successors, predecessors, and any entity in which LDSCO or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline. *Id.* The Court preliminarily certified the Settlement Class for settlement purposes. ECF Doc. 48.

### B.  Settlement Benefits

The Settlement establishes a $750,000 non-reversionary common fund that will provide Settlement Class Members with timely benefits aimed at remediating the harms they claim to have suffered as a result of the Incident. SA ¶¶ 38, 42, 46, 48-53, 58-60. The benefits of the Settlement are available to all Settlement Class Members who submit a Valid Claim. *See id.*

Under the terms of the Settlement Agreement, after the distribution of the approved attorneys' fees, class counsel's litigation costs and expenses, administration fees, reimbursement of out-of-pocket losses, and service awards, the Settlement Administrator will make pro rata settlement payments of up to $70.00 of any remaining funds to each Settlement Class Member who submits a claim. *See id.* This estimated $70.00 cash payment may decrease on a pro rata basis, depending upon the number and amount of claims approved. *Id.* ¶ 48.

Second, in addition to the pro rata cash payment, Settlement Class Members may submit Claim Forms for Out-of-Pocket Losses of up to $5,000. SA ¶¶ 50-51. The reimbursement of documented Out-of-Pocket Losses is detailed in the Long Form Notice approved by the Court at preliminary approval. *See* SA, Ex. 2 at 31-32.[3]

Third, separate from, and in addition to, the other Settlement Benefits described above, Defendant has taken or will undertake significant business changes to protect the data security of the Class Representatives and the Settlement Class. SA ¶ 62. Costs associated with these business practice changes shall be paid by Defendant separate and apart from the Settlement Fund. *Id.* Defendant has provided a confidential declaration to Class Counsel which included documents regarding the facts and circumstances of the Data Incident, LDSCO's response thereto, and the changes and improvements that have been made or will be made to protect Settlement Class members' information from further unlawful intrusions. Walker Final Approval Decl. ¶ 4 The

---

[3] These losses include, but are not limited to, unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; costs incurred on or after October 18, 2022, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

approximate cost of those security-related measures to date is $116,000, with an approximate annual cost of $260,000. *See id.*

### C. Notice, Fees, and Service Awards

The Settlement also provides that all costs of notice and settlement administration as well as attorneys' fees, costs, and service awards (as approved by the Court) will be paid from the Settlement Fund. SA ¶ 46. The Court approved the proposed notice program when it granted preliminary approval, and the Settlement Administrator, Verita, with the assistance of the parties, effectuated the notice program consistent with the Settlement Agreement and Preliminary Approval Order. Verita Decl. ¶¶ 2-6. Verita mailed notice directly to 57,932 Settlement Class Members. *Id.* ¶ 5. After re-sending undeliverable notices, following an advanced address search, Verita opines that notice reached 92.88% of Class Members. *Id.* ¶ 3. This is an excellent result. Notice was also available via a dedicated settlement website. *Id.* ¶ 4.

The Notice instructed Settlement Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against the Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. *See* SA Exs. A-B. The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on December 17, 2024, with no exclusion requests or objections received from any Class Members. Verita Decl. ¶¶ 8, 9. The claims deadline was also December 17, 2024, and currently 1,603 claims have been submitted, which is approximately 2.77% of the Class. Verita Decl. ¶ 7.

Finally, the Court previously granted Plaintiffs' request for an award of attorneys' fees and reimbursement of reasonable costs and expenses of $250,000, and service awards of $3,500 to each of the two class representatives for a total of $7,000. ECF Doc. 50.

## IV. LEGAL STANDARD

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members' claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).[4] These factors are consistent with the common-law criteria that preceded Rule 23. *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (laying out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class

---

[4] Here, there are no agreements between the Parties except those set forth in, or explicitly referenced in, the SA. Thus Rule 23(e)(2)(C)(iv) is irrelevant here.

members); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012), quoting *Reed*, 703 F.2d at 172.

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *O'Donnell v. Harris Cnty.*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019). "When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. Civ.A.301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Id.* at 649. Indeed, because "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.").

Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

## V.    ARGUMENT[5]

### A.  The Settlement is Fair, Reasonable, and Adequate

Under both Rule 23(e) factors and the Fifth Circuit's *Reed* factors, the Court should grant Plaintiffs' Motion for Final Approval of this Settlement, which provides immediate relief to approximately 58,065 Class Members affected by Defendant's data security incident. As the Court held when it granted preliminary approval, the Settlement is "fair, adequate, and reasonable to the Settlement Class..." ECF Doc. 48. Nothing has changed since preliminary approval that should alter this assessment. In fact, at the time of filing this Motion, 1,603 claims have been filed and zero Class Members submitted requests for exclusion, and zero objections were received, further supporting that the settlement is, in fact, fair, reasonable, and adequate. Walker Final Approval Decl. ¶¶ 7, 12; *See Burford v. Cargill, Inc.*, No. 05-0282, 2012 WL 5472118, at *6 (W.D. La. Nov. 8, 2012) (approving a class settlement because "not a single class member objected to the settlement" and that "the existence of 2 opt-outs established that "the settlement process worked" while also showing there was not "dissatisfaction with the settlement."). For these reasons, and for the additional reasons Class Counsel discuss below, the Court should finally approve the Settlement.

#### 1.    Plaintiffs and Class Counsel Provided Excellent Representation.

Class Counsel vigorously and zealously litigated this action from its inception, using their combined vast experience in data privacy cases. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in

---

[5] In addition to the arguments made below, Plaintiffs incorporate by reference those made in the Memorandum in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan, ECF Doc. 43 at 9-25.

class-action litigation," including "experience representing consumer classes in similar data-breach cases"); *cf.* Walker Final Approval Decl. ¶ 11 (setting forth in part Class Counsel's experience and success in data privacy class actions); Declaration of Justin C. Walker in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Walker Preliminary Approval Decl."), ECF Doc. 41-1 ¶¶ 3-4 (same); Plaintiffs' Unopposed Motion to Appoint Interim Class Counsel under F.R.C.P. 23(g)(3) (ECF Docs. 21, 21-1, 21-2, and 21-3) (same).

Class Counsel filed a Consolidated Class Action Complaint (ECF Doc. 33), engaged in informal discovery, and participated in an extensive day long mediation with the Hon. Morton Denlow (Ret.) while the motion to dismiss was fully briefed and pending. *See* Walker Final Approval Decl. ¶¶ 1-2; Walker Preliminary Approval Decl. ¶¶ 13-23.

### 2. The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations.

This Settlement is the result of extensive good faith, prolonged and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. Walker Final Approval Decl. ¶ 1. There has been no fraud or collusion, and there are no agreements among the Settling Parties or their counsel apart from the Settlement Agreement. *Id*. "The Court may... presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018).

The parties were able to resolve the case only after: the exchange of informal discovery addressing the number of individuals whose information was impacted in the Data Incident, with the notices sent to those individuals broken down by state; the uniformity of the data elements impacted; cybersecurity enhancements Defendant implemented; and receipt of other information

about the Data Incident. Walker Final Approval Decl. ¶¶ 1-2. The Parties participated in an extensive full-day mediation with Judge Denlow, and only after the mediation ended in an impasse did the Parties accept Judge Denlow's mediator's proposal. *Id*. ¶ 1. *See Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028, at *11 (S.D. Tex. June 8, 2018) (oversight of settlement by a mediator is an indication of procedural fairness), citing *Jones v. Singing River Health Servs. Found*., 865 F.3d 285, 295 (5th Cir. 2017).

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland*, 851 F. Supp. 2d at 1064; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

The Parties settled the case pending Defendant's Motion to Dismiss. See ECF Doc. 37. The Parties' briefing demonstrates that litigation through class certification, summary judgment, trial, and if necessary, appeal would have been an onerous, difficult, and uncertain task for both parties. In contrast, the Settlement obtained provides immediate and direct relief to Class Members now and is within the settlement range for comparable data incident settlements. *See* Walker Final Approval Decl. ¶ 3; Walker Preliminary Approval Decl. ¶ 29.

Moreover, data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig*., No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest.*

10

*Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception. The pursuit of nationwide claims and relief presented complex issues of law and fact. These facts support that continued litigation would be time consuming and expensive, and weigh in favor of final approval.

### 4. The State of Litigation and Available Discovery Support Final Approval.

The next factor involves whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *see also In re Heartland*, 851 F. Supp. 2d at 1064 (S.D. Tex. 2012) (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The parties were able to exchange and analyze the necessary information via public sources and through informal discovery. Walker Preliminary Approval Decl. ¶¶ 8, 18. There is no dispute that a Data Incident occurred, that certain types of unencrypted sensitive Personal Information were accessed and exfiltrated, and that this occurred for approximately 58,065 Class Members. Furthermore, the informal discovery addressed the critical factors relating to the sensitivity of the type of data, the class size, and the extent of exfiltration of the data. Walker Final Approval Decl. ¶ 2 This information provided sufficient basis for a reasoned assessment of the value of the Settlement, particularly where Class Counsel has litigated and resolved the same legal issues in state and federal courts throughout the country and can identify the strengths and weaknesses of the claims and defenses presented in this case. Walker Preliminary Approval Decl. ¶ 29.

11

**5.    The Settlement Terms Appropriately Balance the Merits of Plaintiffs'
Claims with the Likelihood of Success Given the Attendant Risks.**

While Class Counsel believes Plaintiffs have a strong case on the merits, Defendant has a
similarly strong belief to the contrary. While it is undisputed that the data incident occurred,
Defendant strongly disputes that its conduct fell below any relevant standard or that the incident
contributed to any class-wide harm or damages. Coupling Defendant's view with the complexities
discussed above results in a number of controversial factual and legal issues involved in this
litigation, affecting class certification, liability, causation, and damages. Walker Final Approval
Decl. ¶ 6. A settlement that avoids both these uncertainties, as well as the delay and expense of
further litigation, is warranted. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322,
1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the
settlement when the class faced major obstacles in establishing proof of liability and damages).
*See also Reed*, 703 F.2d at 172 (settlement avoids "the delay and expense" of trial).

Accordingly, this factor also supports approval of the Settlement.

**6.    The Recovery is Within an Appropriate Range.**

Even with the litigation risks described above, the proposed Settlement meets and exceeds
other data incident settlements with comparable class sizes. *See* Walker Final Approval Decl. ¶ 3.
This factor also supports final approval of the Settlement.

**7.    The Settlement is Supported by Experienced Class Counsel and the
Proposed Class Representatives.**

Class Counsel has extensive experience with similar data security incident class actions,
and fully endorse the Settlement. *Id.* at ¶¶ 11, 12; Walker Preliminary Approval Decl. ¶ 4. "The
Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great
weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649, citing *Pettway v.*

*Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1216 (5th Cir. 1978); *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference."). Moreover, Class Representatives equally support the Settlement. Walker Final Approval Decl. ¶¶ 9, 10.

### 8. The Settlement Treats Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. Here, the Settlement provided for a notice plan that was designed to reach as many Class Members as possible and provided Class Members with direct mail notice of the Settlement. *See* SA ¶¶ 65-66. It also informed Class Members of their right to object to, or opt out of, the Settlement. *See id.* ¶¶ 67-68. Every Class Member who submitted a valid claim and who attested that he or she was impacted by the Data Incident is eligible to receive up to $70, and those who can prove out-of-pocket losses are eligible to receive damages up to $5,000. *Id.* ¶¶ 48, 50. The Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

### B. The Court Should Finally Certify the Settlement Class.

Settlement classes are routinely certified in consumer data breach cases. This case is no different. This Court already found when it preliminarily approved the Settlement that it likely would certify the Settlement Class. *See* ECF Doc. 48, ¶¶ 1-3.

By all measures, the Settlement Class continues to meet the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class members' claims, the Court should finally certify the Settlement Class for settlement purposes. Since preliminary approval, nothing has changed the factual predicate relative to the Rule 23(a) and pertinent Rule 23(b) factors that would disrupt the Court's previous analysis; therefore, Plaintiffs request that the Court finalize its

decision, for the reasons set forth in the Plaintiffs' Motion for Preliminary Approval and supporting Memorandum. *See generally* ECF Docs. 43, 43-1, 43-2, and 43-3.

### C. The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney,

14

and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir. 2020), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). Verita mailed notice directly to 57,932 Settlement Class Members and re-issued mail notice to 1,262 addresses which were previously undeliverable. Verita Decl. ¶¶ 3, 4. The Short Notice provided an overview of the settlement terms, the monetary benefits available, the options available to Class Members, and the Settlement Website and toll-free number where additional settlement information could be obtained. SA Ex. 1. It also contained a tear-off claim form, which enabled Class Members to submit a claim directly from the short notice. After re-sending undeliverable notices following an advanced address search, Verita opines that notice reached 92.88% of the Class. Verita Decl. ¶ 3. This goes well beyond the 70% notice threshold that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist & Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Jan. 7, 2025).

In addition to the direct mail notice, Verita established a dedicated website for the Settlement where relevant documents were posted for Settlement Class Members to review. Verita

Decl. ¶ 5. Verita established a toll-free telephone number where Settlement Class Members could call and obtain additional information regarding the Settlement. *Id.* ¶ 6.

In sum, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23 and of due process. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines. 1,603 claims have been received to date, and no objections or opt-out requests. Verita Decl. ¶¶ 7-9. The Class's support of the Settlement indicates that it is fair, reasonable, and adequate warranting final approval.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and incorporating its prior Order granting the request for attorneys' fees, expenses, and service awards.

Date: January 7, 2025                     Respectfully submitted,

/s/ Justin C. Walker
Justin C. Walker (*admitted pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
jwalker@msdlegal.com

John J. Nelson (*admitted pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com

*Settlement Class Counsel*

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Phone:214-744-3000
Fax: 214-744-3015
jkendall@kendalllawgroup.com

*Texas Local Counsel for Plaintiffs*
*and the Settlement Class*

Terence R. Coates (*admitted pro hac vice*)
**Markovits, Stock & DeMarco, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com

Gary M. Klinger (*pro hac vice forthcoming*)
**Milberg Coleman Bryson**
**Phillips Grossman PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
glkinger@milberg.com

*Counsel for Plaintiffs and the Settlement Class*

17

## CERTIFICATION OF CONFERRAL

I, Justin C. Walker, Settlement Class Counsel for Plaintiffs, hereby aver pursuant to Local Rule 7.1(D) that I have conferred with the Defendant about the relief sought in this motion, and Defendant agreed not to oppose the relief sought.

/s/ Justin C. Walker
Justin C. Walker

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2025, I served the foregoing upon all parties by their counsel of record by filing it with the Court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

/s/ Justin C. Walker
Justin C. Walker